## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARGARET COYAZO-HERNANDEZ,

      Plaintiff,

vs.                                                            No. CIV 04-1207 JB/WDS

DAVIS and FEDER, A Professional Association;
MARK DAVIS, individually and doing business as
Davis and Feder; RON M. FEDER, individually and
doing business as Davis and Feder, P.A.; ISAAC K.
BYRD, individually and doing business as Byrd, Gibbs
and Martin, P.L.L.C.; BYRD AND ASSOCIATES, A
Professional Association; BYRD, GIBBS AND MARTIN,
P.L.L.C., individually and as successor in interest to Byrd
and Associates; SUZANNE KEYS, individually and
doing business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; KATRINA M. GIBBS, individually and doing
business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; PRECIOUS T. MARTIN, individually and doing
business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; ROBERT G. CLARK III, individually and doing
business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; HIAWATHA NORTHINGTON, individually and
doing business as Byrd and Associates and Byrd, Gibbs and
Martin, P.L.L.C.; JOSIE MAYFIELD, individually and doing
business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; and JAMES T. COTHREN, individually and doing
business as The Cothren Law Firm; THE COTHREN LAW
FIRM; and in his capacity as administrator and special master
of the FEN-PHEN QUALIFIED SETTLEMENT FUND; and
JOHN DOE DEFENDANTS 1-10, et al.,

      Defendants.

**consolidated with:**

SUE RAYBON,

      Plaintiff,

vs.                                                            No. CIV 04-1208  JB/WDS

DAVIS and FEDER, A Professional Association;
MARK DAVIS, individually and doing business as
Davis and Feder; RON M. FEDER, individually and
doing business as Davis and Feder, P.A.; ISAAC K.
BYRD, individually and doing business as Byrd, Gibbs
and Martin, P.L.L.C.; BYRD AND ASSOCIATES, A
Professional Association; BYRD, GIBBS AND MARTIN,
P.L.L.C., individually and as successor in interest to Byrd
and Associates; SUZANNE KEYS, individually and doing
business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; KATRINA M. GIBBS, individually and doing
business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; PRECIOUS T. MARTIN, individually and doing
business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; ROBERT G. CLARK III, individually and doing
business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; HIAWATHA NORTHINGTON, individually and
doing business as Byrd and Associates and Byrd, Gibbs and
Martin, P.L.L.C.; JOSIE MAYFIELD, individually and doing
business as Byrd and Associates and Byrd, Gibbs and Martin,
P.L.L.C.; and JAMES T. COTHREN, individually and doing
business as The Cothren Law Firm; THE COTHREN LAW
FIRM; and in his capacity as administrator and special master
of the FEN-PHEN QUALIFIED SETTLEMENT FUND; and
JOHN DOE DEFENDANTS 1-10, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the: (i) Motion to Dismiss James Cothren, the

Cothren Law Firm and the Fen-Phen Qualified Settlement Fund for Lack of Personal Jurisdiction,

filed March 7, 2005 (Doc. 22); (ii) Motion to Dismiss Defendants Mark Davis, Ron M. Feder, and

Davis & Feder, P.A., for Lack of Personal Jurisdiction, filed March 9, 2005 (Doc. 28); (iii)

Defendants Byrd & Associates, Byrd, Gibbs & Martin, P.L.L.C., Katrina Gibbs, Precious Martin,

Suzanne Keys and Isaac Byrd's Motion to Dismiss for Lack of Personal Jurisdiction, filed May 15,

2005 (Doc. 41); and (iv) Motion for Partial Summary Judgment on the Issue of Jurisdiction Against

the Byrd Defendants, filed March 28, 2005 (Doc. 33).[1]  The Court held a hearing on these motions

on June 30, 2005.  The Court gave a tentative ruling at the hearing, in which it denied the Plaintiffs'

motions and granted the Defendants' motions.  The Court entered a stay of the case until it

completed and filed this Memorandum Opinion and Order.  Consistent with the Court's inclination

provided at the hearing, and for the reasons stated on the record, the Court will deny the Plaintiffs'

motions and grant the Defendants' motions.  The Court will therefore dismiss Defendants Davis &

Feder, Mark Davis, Ron M. Feder ("Davis Defendants"), Isaac K. Byrd, Byrd & Associates, Byrd,

Gibbs & Martin, P.L.L.C., Suzanne Keys, Katrina Gibbs, Precious T. Martin ("Byrd Defendants"),

James T. Cothren, and The Cothren Law Firm ("Cothren Defendants")(collectively, "Defendants")

for lack of personal jurisdiction.[2]

## FACTUAL BACKGROUND

This case concerns a dispute arising out of the Fen-Phen diet drug litigation of <u>Sandra Perry,

et al. v. Wyeth-Ayerst Laboratories Co., a Division of American Home Products Corp., et al.</u>, civil

---

[1] The Court has consolidated <u>Coyazo-Hernandez v. Davis & Feder</u>, No. CIV 04-1207 JB/WDS (D.N.M.), with another case, <u>Raybon v. Davis & Feder</u>, No. CIV 04-1208 JB/WDS.  <u>See</u> Order, filed July 2, 2005 (Doc. 60).  In <u>Raybon v. Davis & Feder, et. al.</u>, the Defendants and Plaintiff Sue Raybon filed an identical series of motions: (i) Motion to Dismiss James Cothren, the Cothren Law Firm and the Fen-Phen Qualified Settlement Fund for Lack of Personal Jurisdiction, filed March 7, 2005 (Doc. 21); (ii) Motion to Dismiss Defendants Mark Davis, Ron M. Feder, and Davis & Feder, P.A., for Lack of Personal Jurisdiction, filed March 9, 2005 (Doc. 27); (iii) Defendants Byrd & Associates, Byrd, Gibbs & Martin, P.L.L.C., Katrina Gibbs, Precious Martin, Suzanne Keys and Isaac Byrd's Motion to Dismiss for Lack of Personal Jurisdiction, filed May 15, 2005 (Doc. 41); and (iv) Motion for Partial Summary Judgment on the Issue of Jurisdiction Against the Byrd Defendants, filed March 28, 2005 (Doc. 33).  This Memorandum Opinion and Order disposes of all of these motions.

[2] Defendants Robert G. Clark III, Hiawatha Northington, and Josie Mayfield did not join in these motions, but have been served in Nos. CIV 04-1207 JB/WDS and 04-1208 JB/WDS. Northington, however, appeared telephonically at the hearing on these motions.

action number 99-0089, Circuit Court of Jefferson County, Mississippi, and a settlement fund established by and under the jurisdiction of a Mississippi court.  Davis & Feder, P.A., a Mississippi law firm, represented plaintiffs in the case of <u>Sandra Perry, et al. v. Wyeth-Ayerst Lab. Company, a Div. of Am. Home Prod. Corp., et al.</u>  Defendants Davis and Feder, of the firm Davis & Feder, P.A, are attorneys who reside and practice law in the state of Mississippi.  <u>See</u> Affidavit of Mark W. Davis ¶¶ 4, 5, 7, at 1 (executed March 9, 2005)(hereinafter "Davis Aff.").  Neither Davis nor Feder has ever been licensed to practice law in New Mexico.  <u>See id.</u> ¶¶ 6, 8, at 1-2.

Byrd & Associates P.L.L.C., a law firm located in Jackson, Mississippi, also represented plaintiffs in the <u>Sandra Perry</u> litigation.  According to Suzanne Keys, an associate with Byrd & Associates, attorneys John Howard and Mary Ellen Duprel contacted Byrd & Associates in early 2000 about the possibility of including their clients in the ongoing litigation involving Fen-Phen.  <u>See</u> Affidavit of Suzanne Keys ¶ 3, at 1 (executed January 5, 2004)(hereinafter "Keys Jan. 5, 2004 Aff.").  Howard and Duprel are both licensed to practice in New Mexico and, at all times relevant to this lawsuit, maintained offices in New Mexico.  <u>See</u> Affidavit of John Howard ¶ 1, at 1 (March 28, 2005)(hereinafter "Howard Aff.").[3]  At the hearing, Howard disputed the allegation that he contacted the Byrd Defendants.  <u>See</u> Transcript of Hearing at 18:11 - 20:14 (taken June 30, 2005);[4] <u>id.</u> at 55:15-20.  Instead, Howard maintains that the first contact with the Byrd Defendants occurred between Duprel and Keys while in Kentucky on an unrelated matter.  <u>See id.</u>  Howard contends that

_____

[3] Keys and Byrd have never been licensed to practice law in New Mexico or been involved in litigation in New Mexico.  <u>See</u> Keys May 27, 2005 Aff. ¶ 3, at 2; Affidavit of Issac K. Byrd, Jr. ¶ 4, at 2 (dated May 27, 2005).

[4] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

Keys informed Duprel of the Fen-Phen litigation and told her that, if she had New Mexico clients, she should join them with their Fen-Phen litigation in Mississippi. See id. at 19:17-25. Howard then stated that Duprel called him, told him of the Mississippi litigation, and instructed him to solicit clients while she was on vacation. See id.

The Plaintiffs contend that the Byrd Defendants had an attorney-client relationship with Coyazo-Hernandez and Raybon, as evidenced by including the name "Byrd & Associates" on the professional service agreements with the Plaintiffs, by receiving forms on behalf of the Plaintiffs, by sending letters to the Plaintiffs, and by contacting clients in New Mexico by telephone. See, e.g., Professional Service Agreement at 1; Diet Drug Settlement with American Home Products Corporation Opt-Out Form at 1 (listing Byrd & Associates Law Firm as Coyazo-Hernandez' attorney); Letters from Suzanne Keys to Fen-Phen Client at 1 (dated November 27, 2000, July 18, 2000, April 11, 2000). The Byrd Defendants dispute this characterization of their relationship with the Plaintiffs. The Byrd Defendants highlight that the Plaintiffs do not mention that the subject lawsuit occurred in Mississippi, not New Mexico, and that any agreement between the Plaintiffs and the Byrd Defendants was as their attorneys in the Mississippi litigation, not any New Mexico litigation. Moreover, the Byrd Defendants maintain that the Plaintiffs availed themselves through their agents and attorneys, Howard and Duprel, of the services of Mississippi attorneys, the Byrd Defendants, for litigation in a Mississippi court. The Byrd Defendants admit, however, that they sent a paralegal to New Mexico to facilitate a medical examination of another Fen-Phen plaintiff. See Keys Jan. 5, 2004 Aff. ¶ 14, at 4. The Byrd Defendants assert that no attorney from Byrd & Associates ever traveled to New Mexico to meet with Howard's clients. See Affidavit of Suzanne Keys ¶ 13, at 4-5 (dated May 27, 2005)(hereinafter "Keys May 27, 2005 Aff.").

-5-

The Plaintiffs assert that Coyazo-Hernandez and Raybon were two of the approximately 140 New Mexican clients who joined the <u>Sandra Perry</u> litigation.  To support this, they offer an excerpt of the Fourth Amended Complaint filed by the Davis Defendants in the <u>Sandra Perry</u> case.  <u>See</u> <u>Sandra Perry, et al. v. Wyeth-Ayerst Lab. Co., a Div. of Am. Home Products Corp., et al.</u>, Fourth Amended Complaint ¶¶ 359-501, at 69-72 (filed April 24, 2000)(hereinafter "<u>Sandra Perry</u> Fourth Amended Complaint").  Even though nothing in the Complaint itself indicates that these plaintiffs are New Mexican, Howard averred at the hearing that all the plaintiffs enumerated on these pages are New Mexico residents, with the exception of Alice Jackson.  <u>See</u> Transcript at 39:18-23; <u>Sandra Perry</u> Fourth Amended Complaint ¶ 502, at 702.  In Coyazo-Hernandez' and Raybon's Complaints, they represent that they are New Mexico residents, a fact that the Defendants do not contest.  <u>See</u> <u>Coyazo-Hernandez v. Davis & Feder et. al.</u>, First Amended Complaint ¶ 4, at 3;  <u>Raybon v. Davis & Feder, et. al.</u> ¶ 4, at 3; Diet Drug Settlement with American Home Products Company, Opt-Out Form, at 1 (dated March 23, 2000)(listing Coyazo-Hernandez' address as being in Alamagordo, New Mexico).  The Byrd Defendants agree that Coyazo-Hernandez and Raybon were among the New Mexico plaintiffs involved in the <u>Sandra Perry</u> litigation.  <u>See</u> Byrd Defendants' Response to Plaintiff's Motion for Summary Judgment on the Issue of Jurisdiction ¶ 3, at 2.

In January 2000,  Defendant Isaac Byrd contacted Davis & Feder and, at the request of Byrd, Davis agreed to amend the complaint in the <u>Sandra Perry</u> case to include some of Byrd's and Howard's clients, including Coyazo-Hernandez and Raybon.  <u>See</u> Davis Aff. ¶¶ 10-11, at 2; <u>Sandra Perry</u> Fourth Amended Complaint at 69 (dated April 24, 2000).  At the time, Mississippi had a liberal joinder rule, which allowed out-of-state plaintiffs to join in actions pending in state court as long as one of the plaintiffs was a Mississippi resident.  <u>See</u> Keys Jan. 5, 2004 Aff. ¶ 3 at 1.

The Plaintiffs contend that the Byrd Defendants advertise in New Mexico. <u>See</u> Advertisements at 1-13.  At least one of these advertisements mentions Fen-Phen.  <u>See id.</u> at 5. None of these advertisements, however, are dated or otherwise indicate when the Byrd Defendants circulated them in New Mexico.  At the hearing, Howard admitted that the advertising provided to the Court postdates the Byrd Defendants' involvement in this case.  <u>See</u> Transcript at 56:15-16.

In March 2000, Howard, Duprel, the Byrd Defendants and the Davis Defendants entered into a fee sharing agreement.  <u>See</u> Keys Jan. 5, 2004 Aff. ¶ 4, at 2; Letter from Isaac K. Byrd to John Howard and Maryellen Duprel at 1 (dated March 20, 2000).  Under this agreement, of the total fee, the Byrd Defendants would receive fifty-five percent, Howard and Duprel thirty-five percent, and the Davis Defendants ten percent.  <u>See</u> Letter from Isaac K. Byrd to John Howard and Maryellen Duprel at 1.  The Byrd Defendants also agreed to bear the expenses.  The Byrd Defendants contend, however, that they had no independent contractual relationship with Howard's and Duprel's clients. <u>See</u> Keys Jan. 5, 2004 Aff. ¶ 4, at 2.  The Byrd Defendants admit, however, that, in August 2000, when Howard and Duprel came to Mississippi and took up residence at a local hotel, Howard's clients would call looking for him, and Byrd & Associates would take messages for Howard or, if possible, answer his client's questions concerning the case.  <u>See id.</u>

On April 24, 2000, Davis of Davis & Feder filed a Fourth Amended Complaint in the <u>Sandra Perry</u> case, which included, among others, Coyazo-Hernandez and Raybon as plaintiffs.  <u>See</u> Sandra Perry Fourth Amended Complaint at 2; <u>id.</u> ¶¶ 382, 471 at 69, 72.  Davis maintains, however, that Davis & Feder never represented Coyazo-Hernandez or Raybon, <u>see</u>  Davis Aff. ¶ 13, at 2, and that his "office has never had any contact with" Coyazo-Hernandez or Raybon, <u>see</u> Email from Mark Davis to Danielle Bridgeforth at 1 (dated August 18, 2004).  Davis & Feder represents that they

assumed no responsibility for contacting or communicating with any of Byrd's and Howard's clients. See Davis Aff. ¶ 12, at 2. According to the Davis Defendants, no Davis & Feder member ever spoke to, corresponded with, or advised Coyazo-Hernandez or Raybon regarding their diet drug claim. See id. ¶ 14, at 2. Moreover, Davis & Feder never arranged for, paid for, or authorized any medical testing of Coyazo-Hernandez or of Raybon. See id. ¶ 18, at 3. Davis & Feder also did not authorize, prepare, or cause to be mailed any requests for medical or pharmacy records, settlement documents, release papers, settlement offers, or settlement check to or from Coyazo-Hernandez or Raybon. See id. Davis & Feder maintains that it was not responsible for conveying any information regarding any settlement proposal's terms to Coyazo-Hernandez or to Raybon. See id. ¶ 19, at 3. Davis & Feder also did not advertise, represent clients, or do business of any kind in the state of New Mexico during any time relevant to this lawsuit. See id. ¶ 17, at 2.

In their affidavits, Coyazo-Hernandez and Raybon admit that Davis did not contact either of them and that, "[a]t the time of dismissal[,] Mark Davis did not represent" either Coyazo-Hernandez or Raybon. See Affidavit of Margaret Coyazo-Hernandez ¶ 4, at 1 (executed August 4, 2005); Affidavit of Sue Raybon ¶ 4, at 1 (executed February 4, 2005). The Plaintiffs, however, highlight that Davis entered an appearance on Coyazo-Hernandez' and Raybon's behalf when he filed the Sandra Perry complaint. See Sandra Perry Fourth Amended Complaint at 1.[5] The Plaintiffs also assert that Davis & Feder have advertised for Vioxx clients in New Mexico, see Howard Aff. ¶ 2, at 1, but conceded at the hearing that the advertisements occurred after the events at issue in this case, see Transcript at 44:16-18.

_____

[5] Howard also notes that Isaac Byrd of Byrd & Associates appears as co-counsel on the Complaint. See id.

The Byrd Defendants contend that, in October 2000, another Fen-Phen case, which did not include Raybon or Coyazo-Hernandez, began in Mississippi.  <u>See</u> Keys Jan. 5, 2004 Aff. ¶ 5, at 2. In that case, the manufacturer agreed to settle the plaintiffs' case as long as all other claims being handled by the plaintiffs' attorneys could also be settled.  <u>See id.</u> ¶ 5, at 2.  The Byrd Defendants contend that Howard and Duprel gave the Byrd Defendants authority to enter into settlement negotiations and a tentative settlement was reached.  <u>See id.</u> ¶ 6, at 2.  The Plaintiffs challenge this assertion, arguing that only parties can agree to settle cases, not attorneys.  The Plaintiffs concede, however, that this point is not necessary to resolve in determining whether there is jurisdiction.  The Byrd Defendants maintain that Howard's and Duprel's clients' claims were submitted to a special master, who ultimately examined each individual's claim and outlined a settlement proposal for each claim.  <u>See id.</u> ¶ 6, at 2.  The Byrd Defendants do not indicate, however, who the special master was to whom the claim was submitted.  The Plaintiffs challenge this assertion by highlighting that Cothren was not appointed as the Special Master until December 19, 2000.

On November 4, 2000, attorneys, including Howard,[6] met in Mississippi to review the special master's proposed settlement outline.  <u>See id.</u> ¶ 7, at 2.  The attorneys received data sheets containing the settlement figures and releases for their respective clients if the client accepted the proposal.  <u>See id.</u>

The Byrd Defendants maintain that, shortly before Thanksgiving 2000, Howard advised Keys that his New Mexico post office box returned the settlement release forms to his clients as "undelivered."  <u>See</u> Keys Jan. 5, 2004 Aff. ¶ 8, at 3.  The Byrd Defendants agreed to re-mail each

---

[6] The Byrd Defendants allege that Duprel was present during this meeting.  The Plaintiffs, however, maintain that Duprel did not attend.  <u>See</u> Plaintiff's Response to Byrd Defendant's Motion to Dismiss for Lack of Personal Jurisdiction at 5.

of the settlement releases to each of Howard's clients and ask that the clients directly return the releases to the Byrd & Associates law firm in Mississippi.  See id.  Keys admits that, because of the confusion, Byrd & Associates received phone calls from some of Howard's clients.  See id.  The Plaintiffs contend that the Byrd Defendants' telephone contact with the New Mexico plaintiffs occurred outside of the time frame indicated in Keys' affidavit, and that such communication was based on an attorney's duty to communicate with their clients.  The Plaintiffs did not, however, provide any support for this contention.  Keys maintains that neither she nor her legal assistant gave legal advice to any of Howard's clients.  See id.  In disputing this contention, the Plaintiffs note that Martin, Keys' colleague, indicated in a letter that he advised Howard's clients "about the amount of money they will receive in this particular settlement."  Letter from Precious T. Martin to John Howard at 1 (dated January 17, 2001).

The Chancery Court of the First Judicial District of Hinds County, Mississippi, established the Fen-Phen Qualified Settlement Fund pursuant to Treas. Reg. 1-468(B)-1 of the Internal Revenue Code of 1986.  See Order Establishing Qualified Settlement Fund and Appointing Special Master and Claims Administrator ¶ 2, at 2  (December 19, 2000).  On December 19, 2000, the Chancery Court of the First Judicial District appointed Cothren, a sole practitioner doing business as the Cothren Law Firm in Jackson, Mississippi, as Special Master and Claims Administrator of the Fen-Phen Qualified Settlement Fund.  See id. ¶ 4, at 2.  The court further ordered that the Fund would remain subject to the continuing jurisdiction of the Chancery Court of the First Judicial District of Hinds County, Mississippi.  See id. ¶ 2, at 2.

Cothren has been licensed to practice law in the states of Mississippi and Tennessee since 1967.  See Affidavit of James P. Cothren ¶ 2, at 1-2 (executed March 3, 2005)(hereinafter "Cothren

Aff."). He is a member in good standing of the Mississippi Bar and the Tennessee Bar Association.

See id. at 2. He is currently a sole practitioner doing business as the Cothren Law Firm at 820 North

Slate Street, Jackson, Mississippi 39302. See id. at 2.

Cothren has not been licensed to practice law in New Mexico. See id. ¶ 3, at 2. He asserts

that he has not done any business of any kind, legal or otherwise, in the State of New Mexico. See

id.

In his capacity as Special Master and Claims Administrator for the Fen-Phen Qualified

Settlement Fund, Cothren served in a quasi-judicial capacity. See id. ¶ 8, at 4. He developed a

compensation and claims administration system in Mississippi for the plaintiffs who participated in

that settlement and distributed compensation to the plaintiffs who agreed to the settlement. See id.

¶¶ 4, 8, at 2, 4. To enable him, as Special Master and Claims Administrator, to place or categorize

each plaintiff on the settlement matrix he developed, Mississippi counsel gave Cothren data

concerning the plaintiffs participating in that settlement of the Mississippi case, and he determined

how funds in a Mississippi fund should be fairly divided. See id. ¶ 5, at 3.

Cothren was not given any settlement documents or medical information concerning Coyazo-

Hernandez or Raybon. See id. ¶ 6, at 3. Neither Coyazo-Hernandez' nor Raybon's name appears

in Cothren's Fen-Phen Qualified Settlement Fund file. See id. Cothren did not represent or give any

legal advice to any plaintiff, including Coyazo-Hernandez and Raybon. See Cothren Aff. ¶ 7, at 3-4;

Second Affidavit of James P. Cothren ¶¶ 5-6, at 1-2 (executed March 3, 2005)(hereinafter "Second

Cothren Aff.").

Cothren did not speak with or advise Coyazo-Hernandez or Raybon, personally or through

their attorneys, concerning any aspect of their diet drug claims. See Cothren Aff. ¶ 7, at 3-4.

Cothren was not a participant in any telephone conversation with Coyazo-Hernandez, Raybon, or their New Mexico attorneys.  See id. ¶ 3, at 2.  He did not have any written communications with Coyazo-Hernandez, Raybon, or their New Mexico attorneys.  See id. ¶ 7, at 4.  Cothren was not asked to evaluate Coyazo-Hernandez' or Raybon's claims or to review their medical data.  See id.

In their briefing, the Plaintiffs allege that Cothren sent 280 letters into New Mexico.  To support this contention, the Plaintiffs supply the Court with two examples of these forms, one addressed to Raybon and the other to another plaintiff.  The Plaintiffs do not supply the Court with the remaining 278 letters, and do not explain how they derive the estimate of Cothren mailing 280 of these forms to New Mexico.  At the hearing, the Plaintiffs explained that the attached exhibits demonstrate that Cothren sent several documents to each plaintiff and that, because there were approximately 140 plaintiffs in New Mexico, Cothren must have sent "about a thousand" letters into the state.  Transcript at 8:7 - 9:13.  Cothren disputes this reasoning, maintaining that the Plaintiffs have not placed evidence in the record supporting the allegation that Cothren mailed a thousand letters and documents into New Mexico.  See id. at 24:2-3.

In October 2001, Davis, on behalf of all listed plaintiffs in the Sandra Perry lawsuit, including Coyazo-Hernandez and Raybon, agreed to dismiss all claims against all defendants, with the exception of two plaintiffs -- Mary Elizabeth Jones and Sherri McIlwain.  See Agreed Final Judgment of Dismissal with Prejudice as to Less Than All Parties at 1, 3, 5 (dated October 24, 2001).  In the final judgment, the court states: "The parties have represented to the Court that they have compromised and settled all issues in settling plaintiffs' suits as to all defendants . . . to their respective satisfaction."  Id. at 1.  According to Coyazo-Hernandez and Raybon, the dismissal was entered without notice or their consent, and they did not authorize anyone to dismiss their claims

-12-

with prejudice.  <u>See</u> Raybon Aff. ¶¶ 2-8, at 1; Coyazo-Hernandez Aff. ¶¶ 2-8, at 1.  Coyazo-Hernandez and Raybon also contend they did not receive any settlement money from any defendant.  <u>See</u> Raybon Aff. ¶ 2, at 1; Coyazo-Hernandez Aff. ¶ 2, at 1.

**PROCEDURAL BACKGROUND**

The Byrd Defendants, Cothren Defendants, and Davis Defendants make a special appearance with the sole and express purpose of making their jurisdictional objection and seeking dismissal of this lawsuit.  These Defendants move the Court, pursuant rule 12(b)(2) of the Federal Rules of Civil Procedure, for an order dismissing Coyazo-Hernandez' and Raybon's lawsuit against them for lack of personal jurisdiction.  In addition, the Cothren Defendants seek dismissal on the grounds that they are entitled to quasi-judicial immunity and are immune from suit.

The Plaintiffs also moved for partial summary judgment on the issue of jurisdiction.

**STANDARDS FOR DETERMINING RULE 12(b)(2) MOTIONS**

Motions to dismiss under rule 12(b)(2) of the Federal Rules of Civil Procedure test the plaintiff's theory of jurisdiction as well as the facts supporting the jurisdiction.  <u>See</u> <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 153-54 (2d Cir. 1999).  In determining jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated.  <u>See</u> <u>id.</u> at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction").  Where, as here, a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due process requirements.  <u>See</u> <u>Overton v. United States</u>, 925 F.2d 1282, 1283 (10th Cir. 1991); <u>Rambo</u>

-13-

v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988); Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J.).

Coyazo-Hernandez contends that her burden in responding to a motion to dismiss for lack of jurisdiction is to make a prima facie showing of jurisdiction. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002). At this stage of the proceedings, it is not for the court to resolve disputed facts. See id. Rather, the court "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'" Id. (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). The court must construe the plaintiff's evidentiary proffers "'as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 51 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d at 145).

## LAW REGARDING PERSONAL JURISDICTION

In diversity actions, federal courts have personal jurisdiction only over non-resident defendants to the extent the forum's law permits. See Fid. and Cas. Co. v. Philadelphia Resins Corp., 766 F.2d 440, 442 (10th Cir. 1985); Visarraga v. Gates Rubber Co., 104 N.M. 143, 146, 717 P.2d 596, 599 (Ct. App. 1986). "In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 51 (quotations omitted). A district court may exercise authority over a defendant by virtue of either general jurisdiction or specific jurisdiction. "Jurisdiction over a defendant in a suit

-14-

arising out of or related to the defendant's contacts with the forum state is 'specific jurisdiction.'"

Rambo v. Am. S. Ins. Co., 839 F.2d at 1418.

### 1.     New Mexico's Long-Arm Statute and Due Process Requirements.

New Mexico's long-arm statute is designed to ensure a close nexus between a non-resident

defendant's jurisdictional activities and the cause of action against which he must defend.  See

Winward v. Holly Creek Mills, Inc., 83 N.M. 469, 471-72, 493 P.2d 954, 956-57 (1972).  New

Mexico's long-arm statute provides, in pertinent part:

> A.  Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
> > (1) the transaction of any business within this state;
>
> * * * *
>
> > (3)  the commission of a tortious act within this state[.]
>
> * * * *
>
> C.  Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

N.M. Stat. Ann. § 38-1-16(A)(1),(3),(C).

The New Mexico courts have held that long-arm statutes are in derogation of the common

law and that, hence, they are to be strictly construed.  See Worland v. Worland, 89 N.M. 291, 295,

551 P.2d 981, 985 (1976).  As the Honorable Bruce Black, United States District Judge, stated:

> The New Mexico courts use a three-step test to decide whether personal jurisdiction exists over nonresident, out-of-state defendants: (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act.

-15-

Rogers v. 5-Star Mgmt., Inc., 946 F. Supp. 907, 910 (D.N.M. 1996)(Black, J.)(quoting State Farm
Mut. Ins. Co. v. Conyers, 109 N.M. 243, 244, 748 P.2d 986, 987 (1989))(quotation omitted).

      "'Transaction of any business' in this context is defined as 'doing a series of similar acts for
the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing
a single act for such purpose with the intention of thereby initiating a series of such acts.'" Sublett
v. Wallen, 136 N.M. 102, 105, 94 P.3d 845, 849 (Ct. App. 2004)(quoting Tercero v. Roman Catholic
Diocese, 132 N.M. 312, 317, 48 P.3d 50, 55 (Ct. App. 2002)). New Mexico case law establishes that
"the analysis of whether the [defendant] transacted business . . . within New Mexico merges with
the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due
process concerns." Tercero v. Roman Catholic Diocese, 132 N.M. at 317, 48 P.3d at 54. Due
process concerns require that an out-of-state defendant have "minimum contacts" with the forum
state "such that the maintenance of the suit does not offend traditional notions of fair play and
substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(quotation omitted).

      There must be "some act by which the defendant purposefully avails itself of the privilege
of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The
case must arise from these activities. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73
(1985). Stated another way, the non-resident's activities in the forum state should be "such that he
[or she] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp.
v. Woodsen, 444 U.S. 286, 297 (1980).

      "[I]t is essential in each case that there be some act by which the defendant purposefully
avails itself of the privilege of conducting activities within the forum State . . . ." Hanson v.

Denckla, 357 U.S. at 253 (discussing minimum contacts sufficient to satisfy due process).  And even if a plaintiff receives correspondence or a call from the defendant, this contact may be insufficient to constitute transacting business and to satisfy due process requirements as a matter of New Mexico law.  See Diamond A Cattle Co. v. Broadbent, 84 N.M. 469, 471, 505 P.2d 64, 66 (1973)(holding that, where defendant mailed three payments into the state, there was barely any transaction of business, if any at all, and there were not the requisite minimum contacts to satisfy due process requirements); Fox v. Fox, 103 N.M. 155, 156-57, 703 P.2d 932, 933-34 (Ct. App. 1985)(holding that the sole activity of supporting minor children within the state did not fall within any provision of the long-arm statute, nor did it constitute minimum contacts sufficient to subject non-resident parent to the jurisdiction of New Mexico courts).

The Court of Appeals for the State of New Mexico recognized, in the tortious conduct context, the distinction between out-of-state professionals who come to the forum state to solicit their services, and those plaintiffs who travel out of state to seek services:

> When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself.  While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt whereever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice received.
>
> * * * *
>
> It is clear that when a client or a patient travels to receive professional services without having been solicited (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter

complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.

Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because the patient or client upon his return to his own home decided to sue at home for services sought by himself abroad.

Tarango v. Pastrana, 94 N.M. 727, 729-30, 616 P.2d 440, 442-43 (Ct. App. 1980)(quoting Gelineau v. New York Univ. Hosp., 375 F. Supp. 661 (D.N.J. 1974)).

### 2. Joint Ventures, Agencies, and Partnerships.

In Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., the United States Court of Appeals for the First Circuit addressed "whether a federal district court sitting in Massachusetts has specific personal jurisdiction over a suit brought by [Massachusetts plaintiff Richard A. Daynard] . . . against [a] Mississippi law firm . . . based . . . on contacts imputed from [a] South Carolina law firm." 290 F.3d at 44. The plaintiff alleged there was jurisdiction over the Mississippi law firm, Scruggs, Millette, Bozeman & Dent, because of a joint venture between Scruggs and the South Carolina law firm, Ness, Motley, Loadholt, Richardson & Poole. See id. An partner from the Ness law firm traveled to Massachusetts to retain Daynard, a law professor, in connection with tobacco litigation. See id. at 46. The Ness defendants did not contest the court's jurisdiction; the Scruggs defendants, however, moved to dismiss for lack of personal jurisdiction. See id. at 49. In holding that the district court erred in not imputing the Ness defendants' contacts with the forum state to the Scruggs' defendants, the First Circuit explained:

The basic question is whether the relationship between the Scruggs defendants and the Motley defendants, however one labels it, is sufficient to attribute any of the Motley defendants' contacts to the Scruggs defendants for the purpose of reaching

-18-

the Scruggs defendants under the Massachusetts long-arm statute as cabined by the
Due Process Clause of the Fourteenth Amendment.

See id. at 53.  The First Circuit held: "For purposes of personal jurisdiction, the actions of an agent

may be attributed to the principal."  See id. at 55.  The First Circuit also discussed the doctrine of

partnership or joint venture by estoppel, as well as agency by estoppel.  See id. at 56.  Concluding

"that the relationship was sufficient for" conferring jurisdiction over the Scruggs defendants, the

First Circuit held:

> Even if the defendants' relationship were to fall slightly outside of the confines of
> these specific doctrines, the question before us is whether a sufficient relationship
> exists under the Due Process Clause to permit the exercise of jurisdiction, not
> whether a partnership, joint venture, or other particular agency relationship between
> the two defendants exists.

See id. at 56-57.  Accordingly, the First Circuit concluded that "the Scruggs defendants' contacts

properly imputed from the Motley defendants, against the backdrop of the Scruggs defendants' direct

contacts with Massachusetts, constitute 'minimum contacts' with Massachusetts 'such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id.

at 63 (quoting Int'l Shoe Co. v. Washington, 326 U.S. at 316; Milliken v. Meyer, 311 U.S. 457, 463

(1940)).

The United States District Court for the Western District of Oklahoma, however, has

recognized that "in those few cases where courts have imputed forum contacts to a nonresident

defendant on . . . an agency theory, the plaintiffs have been strangers to the joint venture

arrangement."  Kenan v. McBirney, 702 F. Supp. 843, 846 (W.D. Okla. 1989).

3.    **Conspiracy.**

In <u>Solv-Ex Corp., et. al. v. Deutsche Bank AG, et. al.</u>, No CIV 99-0003 JC/KBM, filed May

2, 2000 (Doc. 178), the Honorable John Edwards Conway, United States District Judge, discussed

conspiracy as a basis for personal jurisdiction.  As Judge Conway explained:

> The Tenth Circuit has recognized that the acts of co-conspirators, performed in the
> forum state in furtherance of the conspiracy, may constitute sufficient minimum
> contacts to establish personal jurisdiction over co-conspirators who have no other
> contact with the forum.  *See Am[.] Land Program, Inc. v. Bonaventura Uitgevers
> Maatschappij*, 710 F.2d 1449, 1454 (10th Cir. 1983); *Baldridge v. McPike*, 466 F.2d
> 65, 68 (10th Cir. 1972). . . .  However, "mere allegations of conspiracy, without some
> sort of prima facie factual showing of a conspiracy, cannot be the basis of personal
> jurisdiction of co-conspirators outside the territorial limits of the court."  *Baldridge
> [v. McPike]*, 466 F.2d [at] 65, 68.

<u>Solv-Ex Corp., et. al. v. Deutsche Bank AG, et. al.</u>, No. CIV 99-0003, at 22-23.  Judge Conway

concluded that, based on the facts of that case, "[t]here is no evidence that any of the Defendants

entered into any agreement to commit a tortious or unlawful act," <u>id.</u> at 23, and that, "[a]ccordingly,

Plaintiffs have not established personal jurisdiction over any of the Defendants based on a conspiracy

theory of minimum contacts," <u>id.</u> at 24.

## **ANALYSIS**

The Court does not have personal jurisdiction over the Byrd, Davis and Cothren Defendants.

First, the Byrd, Davis and Cothren Defendants are not subject to jurisdiction under New Mexico's

long-arm statute, N.M. Stat. Ann. § 38-1-16(A).  Moreover, no group of Defendants has sufficient

minimum contacts with New Mexico to satisfy due process requirements.  And even if the Court

were to assume that the actions of each Defendant are imputable to all other Defendants, there are

insufficient contacts with New Mexico to come within its long-arm statute or to satisfy the

constitutional requirements set forth in <u>International Shoe Co. v. Washington</u> and its progeny.

Accordingly, the Court will grant the Defendants' motions to dismiss for lack of personal jurisdiction, and deny the Plaintiffs' motions for partial summary judgment on the issue of jurisdiction.

## I.    THE BYRD, DAVIS, AND COTHREN DEFENDANTS ARE NOT SUBJECT TO JURISDICTION UNDER NEW MEXICO'S LONG-ARM STATUTE.

For the Court to exercise jurisdiction over the Defendants, Coyazo-Hernandez and Raybon must meet their burden of showing that the Defendants transacted business or committed a tort in New Mexico, and the New Mexico act gave rise to their cause of action.

### A.    THE BYRD, DAVIS, AND COTHREN DEFENDANTS DID NOT TRANSACT BUSINESS IN NEW MEXICO.

There is evidence of various letters and phone calls coming into the state by several of the Defendants.  The determinative fact defeating jurisdiction under the long-arm statute, however, is that the Plaintiffs -- through their local New Mexico attorneys -- went to Mississippi to join litigation occurring in Mississippi's state court with Mississippi attorneys.

There is no evidence in the record that the Byrd Defendants traveled to New Mexico for the purpose of soliciting clients to join the Fen-Phen litigation.  At the hearing and in his motion, Howard maintained that Keys spoke with Duprel while in Kentucky about joining the Mississippi lawsuit.  Howard put no evidence in the record to support this contention and, even assuming that to be true, there is no evidence Keys or anyone else from Byrd & Associates traveled to New Mexico to meet with Duprel or to solicit any prospective clients.  Thus, the evidence demonstrates that Howard and Duprel solicited clients in New Mexico to join litigation occurring in Mississippi.  The Byrd Defendants are Mississippi attorneys providing services in a Mississippi lawsuit.  Moreover, the Plaintiffs conceded at the hearing that the Byrd Defendants' advertisements supplied to the Court

occurred after the dates at issue in this lawsuit.  There is no evidence that the Byrd Defendants traveled to or advertised in New Mexico to solicit clients during the time of this Fen-Phen litigation.

Howard's and Duprel's actions present a different situation than <u>Daynard v. Ness, Motley, Loadholt, Richardson, P.A.</u>, in which a partner from the South Carolina firm traveled to Massachusetts to retain a Massachusetts resident pertaining to out-of-state litigation.  Rather, the Plaintiffs here -- through their local New Mexico counsel -- went to Mississippi and arranged to participate in Mississippi litigation.  Nevertheless, the Plaintiffs contend there is jurisdiction over the Byrd Defendants because they had an attorney-client relationship with the Plaintiffs, re-sent the release forms to the New Mexico plaintiffs, and had phone conversations with some of the New Mexico plaintiffs.  These letters and phone calls, however, are insufficient to establish that the Byrd Defendants transacted business in New Mexico.  <u>See</u> <u>Caba Ltd. Liab. Co. v. Mustang Software, Inc.</u>, 127 N.M. 556, 562, 984 P.2d 803, 809 (Ct. App. 1999)("[A] nonresident engages in business within the state when he or she chooses to enter into a contract under which a New Mexico resident will perform services in New Mexico that benefit the nonresident."); <u>Sher v. Johnson</u>, 911 F.2d 1357, 1362 (9th Cir. 1990)(describing an out-of-state attorney's letters and calls to client "[a]s normal incidents of [the attorney's] representation" and did not constitute "the promotion of business" in the state").  Moreover, that the Byrd Defendants sent a paralegal to New Mexico to look at another plaintiff is insufficient to establish that they transacted business in New Mexico.  <u>See</u> <u>Austad Co. v. Pennie & Edmonds</u>, 823 F.2d 223, 226 (8th Cir. 1987)(holding that there was no jurisdiction over an out-of-state law firm who had an attorney-client relationship with the resident and who had sent an associate and a law clerk to the state to review and inspect documents). The Byrd Defendants have no office or place of business in New Mexico, and neither Keys or Byrd is licensed to practice

in New Mexico.   Thus, as in <u>Tarango v. Pastrana</u>, the Court concludes the Byrd Defendants were not "transacting business" in the state of New Mexico and, therefore, do not come within the New Mexico long-arm statute.

The same is true for the Davis and Cothren Defendants.   These groups of Defendants had even less contact with New Mexico.   Their activities stem from their connection to the Mississippi litigation -- the Davis Defendants as the lead attorneys, and the Cothren Defendants as having had Cothren appointed the Special Master.   Even assuming that Cothren mailed a couple of hundred letters to New Mexico, based on the nature of the communication -- to distribute settlement funds -- the Court concludes that this activity does not constitute transacting business.   Again, the Plaintiffs voluntarily joined a lawsuit in a Mississippi state court.   That letters were sent into the state as a result of this litigation is insufficient to establish that the Defendants transacted business in New Mexico.

### B.      THE DEFENDANTS DID NOT COMMIT A TORT IN NEW MEXICO.

The Defendants also do not come within the New Mexico long-arm statute based on having committed a tortious act.   In <u>DeVenzeio v. Rucker, Clarkson & McCashin</u>, 121 N.M. 807, 918 P.2d 723 (Ct. App. 1996), the Court of Appeals of New Mexico addressed whether there is "personal jurisdiction over out-of-state attorneys who were retained by New Mexico residents . . . to conduct litigation pending in [California]."   121 N.M. at 808, 918 P.2d at 724.   In that case, the plaintiffs, New Mexico residents, hired a California attorney to represent them in litigation occurring in California.   <u>Id.</u>   The plaintiffs conceded that the attorney did not transact business in the state of New Mexico, but maintained that there was jurisdiction "because [the attorney] perpetrated the intentional torts of fraud, deceit, and misrepresentation in his communications through the letters and telephone

calls." 121 N.M. at 809, 918 P.2d at 725. The court rejected this contention, explaining that, because the attorney's "primary service . . . was to provide legal services on their behalf[,] . . . [the] letters and telephone calls to the [plaintiffs] in New Mexico were ancillary to this primary function." 121 N.M. at 810, 918 P.2d at 726. The court concluded that, because "the dispute between the [plaintiffs] and [the attorney] arose out of [the attorney's] representation of the [plaintiffs] in California[,] . . . any injury was to the [plaintiffs'] rights in California." 121 N.M. at 811, 918 P.2d at 727. The court concluded that the district court properly dismissed the case for lack of personal jurisdiction over the attorney. 121 N.M. at 812, 918 P.2d at 728.

Similarly, in this case, the Plaintiffs' injury, if any, relates to their rights in Mississippi involving the Fen-Phen litigation and settlement fun. Because "[a]ny mishandling by [the Defendants] of the [Plaintiffs' Mississippi] case resulted in the [Plaintiffs] losing rights in [Mississippi]," id., the Court concludes that the tortious act, if any, occurred in Mississippi. Accordingly, the Defendants do not come within New Mexico's long-arm statute § 38-1-16(C).

The Court finds, therefore, the individual contacts of each group of Defendants to New Mexico are insufficient to bring them within New Mexico long-arm statute.

## II.   THE DEFENDANTS DO NOT HAVE THE REQUISITE MINIMUM CONTACTS WITH THE FORUM STATE TO SATISFY DUE PROCESS.

The Byrd, Davis, and Cothren Defendants do not have sufficient contacts with New Mexico to satisfy due process requirements. Even if the Court were to impute the actions of each Defendant to all Defendants, there is insufficient contact with New Mexico to satisfy the constitutional requirements outlined in International Shoe Co. v. Washington and its progeny.

-24-

**A.  THE PLAINTIFFS CANNOT ESTABLISH PERSONAL JURISDICTION BASED ON A THEORY OF A JOINT VENTURE OR CONSPIRACY BETWEEN THE DEFENDANTS.**

Unlike the cases in which courts have based personal jurisdiction over nonresident defendants on joint venture, agency, or partnership between the defendants, see Daynard v. Ness, Motley, Loadholt, Richardson, P.A., 290 F.3d at 56-57, the Plaintiffs in this case are not strangers to the joint venture. To the contrary, they were part and parcel of it. To the extent the Plaintiffs rely on a conspiracy theory to impute the actions of some Defendants to all the Defendants, the Plaintiffs have not offered any evidence to satisfy their prima facie burden that a conspiracy existed between the Defendants.

The Court concludes, therefore, that it is inappropriate to consider the Byrd, Davis and Cothren Defendants' actions as imputable for one another for the purposes of determining whether this Court has personal jurisdiction over them. To do so would be to stretch the joint venture and conspiracy doctrines further than other courts have, to date, been willing to extend them.

**B.  EVEN ASSUMING THE ACTIONS OF EACH DEFENDANT WERE IMPUTABLE TO THE OTHER DEFENDANTS, THERE IS INSUFFICIENT CONTACTS TO SATISFY DUE PROCESS REQUIREMENTS.**

Even assuming that the Defendants engaged in a joint venture and that, because of that relationship, the Court should impute each Defendant's actions to the other Defendants, the Court nonetheless concludes that all of these activities combined are insufficient to satisfy the requisite minimum contacts of the Due Process Clause. The evidence of the Defendants' combined contacts -- sending a paralegal to New Mexico, mailing presumably hundreds of letters related to the Mississippi litigation, and having telephone conversations with some of the New Mexico plaintiffs --

is insufficient to establish personal jurisdiction over the Defendants.[7]  See Robinson-Vargo v. Funyak, 123 N.M. 822, 825, 945 P.2d 1040, 1044 (Ct. App. 1997)(holding that, when a New Mexico resident solicits the service of a Montana attorney, the attorney's letters and calls to New Mexico are not "sufficient to establish the requisite due process minimum contacts with New Mexico."); DeVenzeio v. Rucker, Clarkson & McCashin, 121 N.M. at 809-10, 918 P.2d at 725-26 ("Ordinarily, the use of mail and telephone services to contact a New Mexico resident from out of state is insufficient to satisfy the 'purposeful availment' prong of a  minimum-contacts analysis.").

The Tenth Circuit has recognized:

Certainly, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction.  In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards.  See Burger King [v. Rudzewicz], 471 U.S. at 475 n.18 . . . ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.").  However, the exercise of jurisdiction depends on the nature of those contacts.  The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards.

* * * *

The proper focus for analyzing these contacts is whether they represent an effort by the defendant to "purposefully avail[] itself of the privilege of conducting activities within the forum State."  Hanson v. Denckla, 357 U.S. [at] 253 . . . .

Rambo v. Am. S. Ins. Co., 839 F.2d at 1418 (citations and footnote omitted).

Looking at the nature of the Byrd and Davis Defendants contacts with New Mexico, the "only 'substantial connection' with [New Mexico is their] representation of [the Plaintiffs] in connection with litigation taking place wholly outside [New Mexico]."  Austad Co. v. Pennie & Edmonds, 823

---

[7] The Cothren Defendants also contend that they are entitled to quasi-judicial immunity. Because the Court finds that it lacks personal jurisdiction over the Cothren Defendants, it should and will not decide this issue.

F.2d at 226-27.  Similarly, the Cothren Defendants' contacts with New Mexico arising solely out of Cothren's appointment as special master of the settlement fund.  The Court of Appeals of New Mexico has rejected the contention that, when an out-of-state attorney undertakes representation of a New Mexico resident in out-of-state litigation, he "purposefully avail[s] himself of the privilege of conducting [activities] in New Mexico" based on the attorney's letters and telephone communication with the resident-client.  DeVenzeio v. Rucker, Clarkson & McCashin, 121 N.M. at 812, 918 P.2d at 728.  Thus, the Court concludes that the Defendants' collective contacts are insufficient "to establish requisite due process minimum contacts with New Mexico."  Robinson-Vargo v. Funyak, 123 N.M. at 825, 945 P.2d at 1043.  Accord Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990)(holding that a Florida law firm's contacts with California while representing a Californian in a Florida proceeding, including accepting payments from a California bank account, and making phone calls and sending letters to California, "do not establish purposeful availment; this is not the deliberate creation of a 'substantial connection' with California" (quoting Burger King Corp. v. Rudzewicz, 471 U.S. at 475)); DeVenzeio v. Rucker, Clarkson & McCashin, 121 N.M. at 811, 918 P.2d at 727 (holding that, when an attorney's "only contacts with New Mexico were telephone calls and letters, incidents of his representation of New Mexico residents in matters pending in California and Arizona," the attorney did not purposefully avail himself of the privilege of conducting activities in New Mexico).

Accordingly, the Court will dismiss pursuant to rule 12(b)(2) all claims against the Cothren, Byrd, and Davis Defendants for lack of personal jurisdiction.

**IT IS ORDERED** that (i) the Motion to Dismiss James Cothren, the Cothren Law Firm and the Fen-Phen Qualified Settlement Fund for Lack of Personal Jurisdiction; (ii) the Motion to Dismiss

Defendants Mark Davis, Ron M. Feder, and Davis & Feder, P.A., for Lack of Personal Jurisdiction; (iii) Defendants Byrd & Associates, Byrd, Gibbs & Martin, P.L.L.C., Katrina Gibbs, Precious Martin, Suzanne Keys and Isaac Byrd's Motion to Dismiss for Lack of Personal Jurisdiction are granted and the Court will dismiss the case against these Defendants without prejudice.  The Plaintiffs' Motion for Partial Summary Judgment on the Issue of Jurisdiction Against the Byrd Defendants is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

John Howard
Santa Fe, New Mexico

-- *and* --

Maryellen Duprel
Camp Wood, Texas

-- *and* --

Geoffrey R. Romero
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

William P. Gralow
Megan Day Hill
Civerolo, Gralow, Hill & Curtis, P.A.
Albuquerque, New Mexico

   *Attorneys for Defendants James P. Cothren,*
   *The Cothren Law Firm, and the Fen-Phen*
   *Qualified Settlement Fund*

-28-

Lawrence H. Hill
Lance Dean Richards
Denise Archuleta
Civerolo, Gralow, Hill & Curtis, PA
Albuquerque, New Mexico

 *Attorneys for Defendants Davis and Feder, PA, Mark Davis, Mark Davis, and Ron M.*
  *Feder*

Randal W. Roberts
Meena H Allen
Simone, Roberts & Weiss
Albuquerque, New Mexico

*-- and --*

Isaac K Byrd
Jackson, Mississippi

 *Attorneys for Defendants Byrd and Associates, PA, Byrd, Gibbs and Martin, P.L.L.C.,*
  *Isaac K. Byrd, Suzanne Keys, Katrina M. Gibbs, and Precious T. Martin*

Hiawatha Northington
Jackson, Mississippi

 *Pro Se Defendant*